Good morning, Your Honors. Douglas Murrell, appearing for Plaintiff Appellant, Paramount Contractors and Developers. I'd like to reserve two minutes of my time for rebuttal, please. Your Honors, we represent Paramount Contractors, a small, family-owned Hollywood business that built two office buildings on Sunset Boulevard in the 1960s. It has managed those same buildings for the past 50 years, and Paramount is not, I hasten to add, a billboard company. It doesn't own any other buildings. It doesn't seek to erect or maintain any signage at any other locations. This case, Your Honors, involves various challenges to the city's signage regulation scheme, including the ordinance that established the original Hollywood Signage Supplemental Use District, which I may refer to as an SUD. Under that 2004 ordinance, the city created a special district to encourage the display of signage that would reflect, and I quote, a modern, vibrant image of Hollywood as the global center of the entertainment industry, close quote, while also limiting clutter and minimizing potential traffic hazards, among other goals. Now, on its face, Your Honors, that ordinance allowed the city and its agent, the Community Redevelopment Agency, the CRA, to grant or deny signage permits upon a whim, and that's precisely, Your Honors, what occurred in practice. Right. So now we have the statute. After we issued our decision in Worldwide Rush, the statute was amended, and the CRA no longer has that arbitrary discretion. Your Honors, the statute was amended, but that does not moot this appeal. Because? For a number of reasons. Okay. First, the city asserts that its state court civil enforcement action, they asserted this in their motion, does not seek to enforce the prior versions of the basic signage regulations, the one that prohibits signage generally. And those were the regulations that were challenged in this action, and also were the subject of the district court's now-reversed August 2008 Worldwide Rush decision. Your Honor, that's a false claim by the city. All of the municipal code regulations that were in effect from 2006 to the present are the subject of claims for potentially millions of dollars in civil penalties. They are the subject of those penalties not only in a case pending in state court against Paramount and others, but also in the recently filed state court action against Van Wagner. All of those claims are still active. Right. So, Ms. Merritt, what I am having trouble understanding is this appeal arises from an operative complaint that you filed challenging essentially the CRA. Now you're arguing that a potential claim for damages should prevent this case from being moot when the claim for damages seems, by your own words, to be, if any, to arise from the enforcement actions pending by the city. In fact, you just said in a recent one, I don't see how you can claim damages for the city's enforcement actions given the operative complaint in this case without writing a foul of, I mean, if your clients found guilty, it had to be Humphrey or even Rooker Feldman. I mean, what can the federal court do about alleged damages arising from other suits by the city? I'm simply attempting to make the point that the case is not moot in and of itself. There are these other actions pending, and we believe that that impacts. Well, now, just a minute. Yes, Your Honor. There are other actions pending where it's not a moot issue. Why is it not moot here? What period? Can you specify what period you are claiming damages for? Yes, Your Honor, and let me use this as an opportunity to clarify. You conceded that there were no damages. Your Honor, let me address all of these questions, if I may. First, let me add it for the record. This case was brought and adjudicated by attorneys, not from our firm. But in any event, the point being, and the important point here, is that what has happened here is that at the district court level, past damages were waived. And that's clear from the record, and I can provide the court with a cite. It's page 13, lines 7 through 8 of the summary judgment MSJ order. That's from the appellant's excerpts of record. So what we are saying is that the past damages that occurred, the damages that occurred as a result of this conduct, are waived. But with respect to ongoing enforcement of these regulations against us, and regulations that would, in effect, prevent us from posting signage, those damages were not waived. There was a proviso to the statement, we're not claiming any damages? There was that proviso? There was a proviso that said we are not going to seek damages for past conduct, because we did, as a matter of fact.  under the city's then existing temporary signage display rules. But what we said is that if the conduct that we're engaged in continues on, and if the city's regulations against what we are doing are unconstitutional, we're not waiving damages as to future damage, as to the future. Where do you say that? Your Honor, that's clear from the court's own discussion about. Where do you say it? We say it in the briefing that we filed in this court. In this court? Yes, Your Honor. But I'm saying where did you say it to the court? The issue, to the district court, Your Honor? Yes. The district court, that issue was adjudicated within the context of discovery, materials, interrogatory responses, I believe, in which the point was made that past damages were being waived but the future damages were not. But I'd love to know where you said it. And what point do your damages begin? The damages begin, Your Honor, from the point in time when. Well, give us the point in time. The point in time would be as soon as. . . You don't have a date? The point in time would be after the court has adjudicated this matter and determines that the. . . So what court has adjudicated it? This court. After this court? Yes, Your Honor. The time begins after this court has adjudicated it? Let me clarify. Let me ask you, when do your damages begin? The damages begin. Give us a date. The damages begin immediately after judgment was entered in the court below. All right. And what date was that? That would be in July, I believe, of 2008. What claims? Let me say. . . What claims in this action would give rise to future damages? In this action? In this action, if this court determines that the Hollywood. . . Only if you win on appeal on the merits will you have damages, and that's why it isn't moot? That's correct. That's novel. That's not. . . I mean. . . You're dismissed on the ground of mootness. That's not reaching the merits. Correct. It's just that as the case was tried, and as you said, as it went to judgment, there were no damages. Your damages began post-judgment. If there's another case that's pending against you that's a live case and that presumably involves the same statutes that were repealed, what precludes you from raising a live case or controversy? I mean, why should we reach an issue in a case in which up to the date of judgment there were no damages? Well, Your Honors, I suppose one answer to that is judicial economy, that it would be useful, extremely useful, in fact, for this court to apply. . . Give an advisory opinion? I'm not suggesting an advisory opinion, but we believe that the issues were fully briefed with respect to this issue, and the court can make a decision about whether or not the city was engaged in an exercise of unfettered discretion with respect to its imposition, for example, of in-lieu fees, which I'd be happy to address if and when we get beyond this question. Mr. Morrell, this is my problem with all that. Say it's my personal opinion, based on worldwide rush, that the delegation of authority to the CRA was unconstitutional because it did allow the CRA to exercise unbridled discretion. That, even if I had that opinion, that's the very issue that is no longer exists, that makes this case moot, because they amended the statute. They're no longer doing that. Your Honor, two responses. First, we have focused so far on the question of damages, but the enactment . . . We did. Well, there's nothing to enjoin if the statute's been repealed, and there's no reason for declaratory judgment. But the statute . . . But the repeal of the statute, Your Honor, did not occur until September of 2010. There was a period between during that two-year period during which the case was stayed, in effect, as a result of the worldwide rush decision being pending before this Court. There was a period of time between 2008 and 2010 when these laws were being challenged and when the question of what kind of conduct our client was permitted to engage in was live and was unresolved. And consequently, during that two-year period, what we . . . The question of whether the conduct that occurred during that two-year period was or was not permissible is a question that ultimately devolves into the determination of whether or not the underlying statute that was in effect was or was not constitutional. And so it is vitally important on an ongoing basis for us to determine whether or not we are entitled to a determination, a declaratory relief determination, for instance, that that particular statute was unconstitutional because that will have real-world impact. Because there was a two-year period between what and what? Between the judgment of the district court? Correct. The judgment of the district court and the determination of the city to amend its Hollywood SUD ordinance to purportedly ban signage. When did the city enact the amendment? I believe it was enacted in September of 2010. When did the city amend the ordinance to eliminate the CRA discretion? Well, Your Honor predicated that as an assumption. I don't believe that that's correct. The CRA continues to have a role under the amended Hollywood Supplemental Use District. It continues to have a review role, and its discretion, its un-cabined discretion, continues to apply. Because if you are seeking a permit under the amended Hollywood SUD, whether you're doing so because of exceptions within the statute or for vesting or for grandfathering or because you're simply seeking, as others have subsequently, a blanket exception to the rule, you still have to go through the CRA. And the CRA's requirements are a predicate to the obtaining. They are the first step in obtaining a permit requirement. I see I'm near the time I wanted to reserve. May I see you some time for rebuttal? Yes. May it please the Court, Michael Bostrom on behalf of the City of Los Angeles. We do believe this case is moot. The ordinance has been repealed. On the issue of damages, we have in the record a declaration from Mr. Fold, the representative of the plaintiff here, that says very clearly and unambiguously that he had no damages until 2010, when the city attorney's office commenced more rigorous enforcement of its signed regulations. We have in the record the history of the city's amendment of its ordinances. The Hollywood SUD has not really been in force or effect since December 26th of 2008. Upon the worldwide rush injunction that the district court entered, the city adopted a moratorium. The city continued that moratorium and adopted a permanent ordinance in 2009, around July, in order to comply with the district court's orders. Once the worldwide rush decision from this court came out, then we swiftly moved to amend the Hollywood SUD, which had lied dormant for quite some time. So the facts are a little bit different than have been represented. In terms of enforcement, the state court enforcement action has nothing to do with the Hollywood SUD. It's not addressing those issues, and it's completely separate and distinct. Can you describe the state court enforcement action? Is the city attorney seeking that Paramount remove the signs that have been there? I assume they've still been there. Incorrect, Your Honor. The signs have been removed. They were removed. So what is the enforcement action about? The enforcement action is to seek remedies for numerous problems that we encountered. There's public safety issues. We had signs being put up in the middle of the night without using contractors. We had scaffolding falling down in the middle of the night on these buildings. The fire department goes out and saves these people from installing these illegal signs. We have electric lights being installed without permits. We have all of the various regulations that you have. Apart from the issues of the SUD, you have issues concerning whether or not the name of the operator is listed on the sign itself. That wasn't complied with. You have problems with materials covering windows and creating fire hazards. All of those sorts of issues are issues that have not been dealt with in this case that are completely separate and distinct from the Hollywood SUD. And is what you told us about the state case, is that part of the record here? The causes of action are. And you can look at them and you can see very distinctly that there's about a 20-page section of both the original complaint in the state court action and the amended complaint, which the city has moved for leave to amend, and it's an unopposed motion. Not one word in that entire section mentions the Hollywood SUD. And just to kind of clearly take the issue off the table, we are representing to this court. We represent it in our papers. We represent here today on the record. We are not enforcing the Hollywood SUD in that action. This is being recorded. They can take that to the state court action. If there's any confusion as to whether there's no independent basis for us to pursue our claims in state court, they can move to dismiss them in terms of waiver or estoppel. We're not pursuing the Hollywood SUD at all. They're separate issues. And assume we dismiss on the ground of mootness. I assume you're willing to stipulate that you wouldn't claim that there was any race judicata effect. Correct. It would not be a judgment on the merits. But we would like to note that there has been a waiver of damages. A whole right waiver of damages. There was no caveats as were described. What we did is we propounded discovery asking for the evidentiary support for their damages. They didn't want to provide that information to us for strategic reasons. And we said, hey, you can't pursue a claim for damages against the city and withhold discovery. And they said, fine, we'll take the issue off the table. We're not pursuing damages. Now, I've heard Paramount now claim that we want to pursue damages for future enactments or future dealings with the city. But what we have to remember is this is a facial challenge. I don't know how you can waive damages as to a facial challenge on day one but not waive them on day two. You've got to assume that the face is the face on day one and it isn't day two. If there's a different application, different manner of adjudicating the application that's somehow different, maybe you can understand that, but when it's purely a facial issue, I think it's encompassed within the waiver most clearly. Was the statute amended to eliminate the CRA discretion because of worldwide rush? The statute was amended. Again, you've got a legislature with 15 different city councilmen and women, and I assume you have 15 different reasons. I assume your office or somebody from your office went and presented to the council, you've got to vote this way because of X, Y, or Z. No. Obviously, I cannot divulge attorney-client privilege communications, but we do have on the record in that case the city council member who is charged with that area basically made a policy decision and said, look, we were using super graphics as a mechanism to encourage redevelopment, to eliminate blight, to get this part of the city going, which has been having a lot of problems for the past 20 years. I'm sorry? Which council member is it? Garcetti. And he said to both the planning commission and to the council, he said, look, it's done its job. The existence of this program has rehabilitated the area. We no longer need super graphics. If there is an issue with the discretion of the CRA, that can be dealt with much more simply than just banning super graphics in Hollywood completely. Many different approaches could have been taken if there was a desire simply to rein in some discretion. I don't want to concede that because I think that there are arguments as to why the CRA's program complies with Supreme Court precedent, but I did want to make the distinction that the policy basis for amending the Hollywood SUD had other reasons in mind. So there's an outright ban now subject to grandfathering? I'm sorry? There's now an outright ban? There is a ban subject to grandfathering, correct. There's vested rights that California law bestows upon a number of developers. There are people who had project approvals two years ago who spent millions of dollars in reliance on those project approvals. They're going to get to go forward with their signs, but under the amended Hollywood SUD, super graphic signs are completely banned. There are no exceptions available under the city's code. The CRA does not have any discretion whatsoever to permit super graphic signs at this point. Unless there's any other questions, I'll conclude. Thank you. May it please the Court, with respect to the relief that we are seeking, in addition to what we've already discussed, damages, injunctive relief, declaratory relief, we believe that the district court can still award paramount its desired permits, the ones that were denied to it, or enter other appropriate orders that would allow it to then proceed and make a, and attempt to mitigate the damage that the city's conduct has caused. The state court enforcement action that Judge Corman asked about is a case in which, though the city may be correct in terms of disclaiming any desire to enforce the Hollywood SUD, the city is still attempting in that case to use against us and to use against others claims that we have violated the underlying citywide ban that was the subject of the World Wide Rush decision. And those claims are still active. Those claims are still being made by the city. And consequently, there are real world implications to what is going on here. I would also add that with respect to the claim that what we are seeking is simply a, what we are making is simply a facial challenge. Damages are nevertheless available to us under a facial challenge. And I want to conclude, I see my time is running out, by simply noting that the claim that was just made with respect to the procedures that occurred at the city council level with respect to Council Member Garcetti are matters that are totally outside the record. And the only thing that is clear from the record is that the city has used precisely the same rationale that it employed for creating a signage district in the first place to now abandon that signage district. So what? And the purpose, because Your Honor, what it reflects is schizophrenia on the part of the city with respect to its justifications for how can the same justification be used to allow signage in the one instance A, circumstances change, and B, they could change their mind. So what? I don't understand what this has to do with the doctrine of mootness. Could I ask you one procedural question? Yes, Your Honor. Suppose some of the things you say are accurate. Could you go back to the district court, even if we dismiss the appeal on the ground of mootness, let's say under Rule 60, and ask for some sort of relief? I believe we could attempt to do that, Your Honor. Whether or not the district court would be receptive to that in the context of this action as opposed to any other actions is a question I can't address. Could I ask you, just to be a little more precise? Yes, Your Honor. You waive the past damages. What does the district court understand as to what allegations you have in front of the district judge as to your future damages? How do you spell them out? Your Honor, what we were seeking, because we were seeking relief beyond damages, we were seeking injunctive relief as well, what we were arguing below, I believe, was that with respect to that which has occurred already, King's X in effect, that we are not going to attempt to recover for that. But if the court determined below, and if this court determines that it was improper for the court to deny us injunctive relief, then on a going forward basis we would have a viable claim for damages. But you don't specify anything. The amount of damages would be a subject to be considered by the court for that period between the time the judgment was initially entered and the time that we ceased erecting signs in fear of what the city would do to us in terms of criminal prosecution, which I suppose they suspended for two years enforcement of this. While the worldwide rush decision was pending before this court, that is in effect what occurred. Did you suffer damages when they suspended it? Did we suffer damages? We did, Your Honor, because we were for a period of time withholding posting signage because we did not know how this court was ultimately going to rule. And certainly once this court did rule, as the counsel has pointed out, we did not post signage for fear that we would be, like others who you will be hearing from momentarily, criminally prosecuted. You have a cross-section against the court for taking two years. Oh, no, no, no, no. I don't know how that's the city's fault. No, absolutely not. I cast no aspersions upon anyone, including this court. Thank you, Your Honor. My time has expired.
judges: Korman, Noonan, Wardlaw